1  Eric D. Houser (SBN 130079)
   Denetta EJ Scott (SBN 236899)
2  HOUSER & ALLISON
   A Professional Corporation
3  9970 Research Drive
   Irvine, CA 92618
4  Tel: (949) 679-1111
   Fax: (949) 679-1112
5  Email: dscott@houser-law.com

6
   Attorneys for Plaintiff,
7  DEUTSCHE BANK NATIONAL TRUST COMPANY, AS INDENTURE TRUSTEE FOR
   AMERICAN HOME MORTGAGE INVESTMENT TRUST 2007-1
8

9              UNITED STATES DISTRICT COURT FOR THE

10             NORTHERN DISTRICT OF CALIFORNIA

11

12 DEUTSCHE BANK NATIONAL TRUST              CASE NO:
   COMPANY, AS INDENTURE TRUSTEE            Honorable:
13 FOR AMERICAN HOME MORTGAGE
   INVESTMENT TRUST 2007-1,
14
                                            COMPLAINT FOR FRAUD, SLANDER
15         Plaintiff,                        OF TITLE, CANCELLATION OF
                                            WRITTEN INSTRUMENT AND
16 vs.                                       DECLARATORY RELIEF

17
   CB EQUITIES, LLC, a Wyoming limited
18 liability company; AMERICAN BROKERS
   CONDUIT CORPORATION, a New York
19 corporation;

20         Defendants.

21     The Complaint alleges as follows:

22              **PARTIES AND JURISDICTION**

23     1.    Plaintiff DEUTSCHE BANK NATIONAL TRUST COMPANY, AS

24 INDENTURE TRUSTEE FOR AMERICAN HOME MORTGAGE INVESTMENT TRUST

25 2007-1 ("DEUTSCHE BANK, as Trustee") is a national banking association who is a citizen of

26 California and authorized to do business in California.  DEUTSCHE BANK, as Trustee has a

27 beneficial interest in Property commonly known as 223 Verde Mesa Danville, CA, the property

28 that is the subject of this action (the "Property").

COMPLAINT
1

\\IRVLAW1\ProLaw Files\Document\136113.docx

2.      Defendant CB EQUITIES, LLC, is at all times mentioned herein a Wyoming limited liability company, having its principal place of business in the State of Wyoming. Plaintiff is informed and believes and thereon alleges that CB EQUITIES, LLC was at all times relevant in this Complaint authorized to do business in California.

3.      Defendant AMERICAN BROKERS CONDUIT CORPORATION, is at all times mentioned herein a New York corporation, having its principal place of business in the State of New York.  Plaintiff is informed and believes and thereon alleges that AMERICAN BROKERS CONDUIT CORPORATION was at all times relevant in this Complaint authorized to do business in California.

4.      The jurisdiction of this Court over the subject matter of this action is predicated on 28 USC § 1332.  The amount in controversy exceeds $75,000.00, exclusive of interest and costs.  Plaintiff and Defendants are citizens of different states and the Property is located in this district.

5.      Plaintiff does not presently know the true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive.  Plaintiff will seek leave of court to amend this complaint to allege said Defendants true names and capacities as soon as the Plaintiff ascertains them.

## VENUE

6.      The claim that is the subject of this litigation arose in this district.  The Property is also in this district.

## GENERAL ALLEGATIONS

7.      This action seeks to cancel, extinguish or void a Stipulated Judgment entered by this Court on November 26, 2012 in the case of CB Equities, LLC v. American Brokers Conduit Corporation, case number C-12-5449 and later recorded in the Official Records of Contra Costa County on November 29, 2012 against property located at 223 Verde Mesa Drive, Danville, California 94526.  A certified copy of the Stipulated Judgment is attached hereto as Exhibit "A". The legal description of the Property is as follows:

/ / /

All of that certain real property situated in the City of Danville, County of Contra Costa, State of California, described as follows: Lot 14, Map of Verde Mesa, filed November 17, 1952, Map Book 48, APN: 195-080-008.

8.      On January 22, 2007, the borrower Bill G. Williams received a loan in the amount of $688,000.00 to secure the Property. This loan was secured through a Deed of Trust, recorded in the Official Records of Contra Costa County on January 30, 2007 ("2007 Deed of Trust"). A certified copy of the 2007 Deed of Trust is attached hereto as Exhibit "B". The lender at the time was American Brokers Conduit, who is not in any way affiliated with Defendant AMERICAN BROKERS CONDUIT CORPORATION. Mortgage Electronic Registration Systems, Inc. was the nominee beneficiary.

9.      On July 5, 2012, the beneficial interest in the Deed of Trust was assigned from Mortgage Electronic Registrations Systems, Inc. as nominee for AMERICAN BROKERS CONDUIT to Plaintiff. This assignment was recorded in the Official Records of Contra Costa County on August 13, 2012. A certified copy of the assignment is attached hereto as Exhibit "C".

10.     On or about August 13, 2012, borrower Bill G. Williams failed to make his payments under the loan and Deed of Trust and a Notice of Default was recorded in the Official Records of Contra Costa County. A Substitution of Trustee was also recorded that day, naming Power Default Services, Inc. as the trustee. A certified copy of the Substitution of Trustee is attached hereto as Exhibit "D". A certified copy of the Notice of Default is attached hereto as Exhibit "E".

11.     On October 17, 2012, borrower Bill G. Williams executed a Grant Deed, purportedly transferring his interest in the Property from himself to Defendant CB EQUITIES, LLC. The Grant Deed was recorded in the Official Records of Contra Costa County on the same day. Plaintiff is informed and believes that the Grant Deed was subject to the 2007 Deed of Trust. A certified copy of the Grant Deed to CB EQUITIES, LLC is attached hereto as Exhibit "F".

12.     Plaintiff is informed and believes CB EQUITIES, LLC entered into the Grant Deed to improperly and fraudulently extinguish the 2007 Deed of Trust.

\\IRVLAW1\ProLaw Files\Document\136H3.docx

13.     Five days after CB EQUITIES, LLC was deeded the Property, it filed a lawsuit in this Court, cause number C12-5449 to cancel the 2007 Deed of Trust.   The only named defendant in that action was Defendant AMERICAN BROKERS CONDUIT CORPORATION (hereinafter the "District Court Action"), who is not and was not affiliated with American Brokers Conduit, the original Lender on the Loan.

14.     On November 15, 2012, Defendant CB EQUITIES, LLC and AMERCIAN BROKERS CONDUIT CORPORATION entered into a stipulated judgment in the District Court Action, purportedly cancelling and extinguishing the 2007 Deed of Trust.

15.     On November 26, 2012, the court in the District Court Action signed the stipulated judgment between Defendants CB EQUITIES, LLC and AMERICAN BROKERS CONDUIT CORPORATION, purportedly expunging, cancelling and nullifying the Deed of Trust. This judgment was subsequently recorded on November 29, 2012. See Exhibit "A".

16.     The District Court Action did not name Mortgage Electronic Registration Systems, Inc. or the Plaintiff as parties to the action.  Plaintiff had the beneficial interest in the Property after the August 13, 2012 assignment.  See Exhibit "C".

17.     On November 26, 2015, Plaintiff, by and through its agent Power Default Services, Inc., caused to be recorded a Rescission of the Notice of Default and recorded a new Notice of Default, after the continued failure of Bill Williams to make his loan payments on the 2007 Deed of Trust.  A certified copy of the Rescission of Notice of Default is attached hereto as Exhibit "G".  The Notice of Default is attached hereto as Exhibit "H".

18.     The stipulated judgment was not executed by parties who had any right, title, claim or interest in the property to expunge or extinguish the 2007 Deed of Trust. Plaintiff is informed and believes that the stipulated judgment was procured by fraud.

19.     Plaintiff is informed and believes and thereon alleges that Defendants AMERICAN BROKERS CONDUIT CORPORATION did not have the interest in the Property to stipulate to a judgment to expunge and extinguish the 2007 Deed of Trust at issue.

/ / /

/ / /

\\IRVLAW1\ProLaw Files\Document\136113.docx

20.    Plaintiff is informed and believes and thereon alleges that Defendant CB EQUITITES, LLC is not a party to the 2007 Deed of Trust and did not have the power to stipulate to a judgment to expunge and extinguish the 2007 Deed of Trust.

21.    As a result of the actions taken by Defendants CB EQUITIES, LLC and AMERICAN BROKERS CONDUIT CORPORATION, the Property has been deeded first to Windeler Development Group, Inc. then and Kyle Halliday and Rachel Halliday.  They each claim some interest in the property based on the improper judgment, creating a conflict in title with Plaintiff.

## FIRST CAUSE OF ACTION

### (Fraud)

### (Against All Defendants)

22.    Plaintiff realleges each and every allegation contained in paragraphs 1 through 21, inclusive, of this Complaint as through set forth in full herein.

23.    On October 17, 2012, Bill G. Williams executed a Grant Deed, purporting to transfer his interest in the property to Defendant CB EQUITIES, LLC.

24.    At the time of the transfer of interest from Bill G. Williams to CB EQUITITES, LLC, the interest was subject to the 2007 Deed of Trust.

25.    At the time of the transfer of interest from Bill G. Williams to CB EQUITITES, LLC, CB EQUITIES, LLC knew or should have known that the 2007 Deed of Trust was a valid loan and that CB EQUITIES, LLC did not assume the 2007 Deed of Trust from Bill G. Williams.

26.    Five days after obtaining title to the Property, Defendant CB EQUITIES, LLC filed a lawsuit in the United States District Court for the Northern District of California, cause number C12-5449 to cancel the 2007 Deed of Trust.  CB EQUITIES, LLC only named AMERICAN BROKERS CONDUIT CORPORATION as the Defendant.

27.    Defendants CB EQUITIES, LLC and AMERICAN BROKERS CONDUIT CORPORATION knew they lacked the authority to enter into a stipulated judgment that purportedly nullified cancelled and expunged the 2007 Deed of Trust.  CB EQUITIES, LLC

\\\RVLAW1\ProLaw Files\Document\136113.docx

1  did not assume the loan and 2007 Deed of Trust and therefore did not have the power to seek to

2  cancel, expunge or nullify the Deed of Trust.

3       28.     AMERICAN BROKERS CONDUIT CORPORATION did not have any interest

4  in the Property as it was not the original lender but a company posing to be the original lender

5  for the purpose of extinguishing the 2007 Deed of Trust.  Additionally, all beneficial interest in

6  the Property was assigned to Plaintiff prior to the initiation of that lawsuit.  Therefore lacked the

7  authority to enter into a stipulated judgment that purportedly nullified, cancelled and expunged

8  the 2007 Deed of Trust.

9       29.     The parties have all relied on the stipulated judgment by claiming superior

10  interest in the Property, creating an issue of title to the detriment and harm of Plaintiff.

11       30.     As a result of Defendants CB EQUITIES, LLC and AMERICAN BROKERS

12  CONDUIT CORPORATION'S wrongful conduct, Plaintiff has and will continue to suffer

13  damages, in an amount to be proven at trial.  The acts of Defendants CB EQUITIES, LLC and

14  AMERICAN BROKERS CONDUIT CORPORATION were willful and malicious, and Plaintiff

15  is entitled to punitive and exemplary damages.

## SECOND CAUSE OF ACTION

### (Slander of Title)

### (Against All Defendants)

19       31.     Plaintiff realleges each and every allegation contained in paragraphs 1 through

20  30, inclusive, of this Complaint as through set forth in full herein.

21       32.     AMERICAN BROKERS CONDUIT CORPORATION, purportedly acting as the

22  Lender and CB EQUITIES, LLC, as the purported buyer of the property from borrower Bill G.

23  Williams, wrongfully and without privilege caused the November 29, 2012, Judgment, to be

24  recorded against the Property for the purpose of nullifying the 2007 Deed of Trust.

25       33.     Defendants AMERICAN BROKERS CONDUIT CORPORATION and CB

26  EQUITIES, LLC did not have the authority to stipulate to a judgment nullifying the 2007 Deed

27  of Trust.  Additionally, neither Mortgage Electronic Registration Systems, Inc. nor Plaintiff

28

1    were given notice prior to the entering into the judgment, purportedly nullifying, cancelling and

2    extinguishing the 2007 Deed of Trust.

3         34.    Defendants AMERICAN BROKERS CONDUIT CORPORATION and CB

4    EQUITIES, LLC have slandered Plaintiff's title by virtue of the stipulated judgment.

5         35.    Defendants AMERICAN BROKERS CONDUIT CORPORATION and CB

6    EQUITIES, LLC have caused damages to Plaintiff including attorneys' fees in amount to be

7    proven at trial.

8                          **THIRD CAUSE OF ACTION**

9         **(Cancellation of Written Instrument – Stipulated Judgment)**

10                          **(Against All Defendants)**

11        36.    Plaintiff realleges each and every allegation contained in paragraphs 1 through

12   35, inclusive, of this Complaint as through set forth in full herein.

13        37.    Defendants CB EQUITIES, LLC and AMERICAN BROKERS CONDUIT

14   CORPORATION initiated the lawsuit in this court, obtained judgment and wrongfully recorded

15   the stipulated judgment knowing that the Defendants lacked the power and authority to nullify

16   and extinguish the 2007 Deed of Trust. Plaintiff continues to suffer loss and damages as a result

17   of the recorded judgment.

18        38.    Plaintiff is informed and believes that the stipulated judgment was entered into

19   and recorded willfully and with conscious disregard for Plaintiff's rights and with the specific

20   intent to defraud and injure Plaintiff.

21        39.    Plaintiff seeks to void the stipulated judgment recorded November 29, 2012,

22   which was perpetuated by fraud.

23        40.    By virtue of Defendants AMERICAN BROKERS CONDUIT CORPORATION

24   and CB EQUITIES, LLC's conduct, Plaintiff is entitled to general and special damages to be

25   determined at the time of trial.

26   / / /

27   / / /

28   / / /

\\IRVLAW1\ProLaw Files\Document\136113.docx

**FIFTH CAUSE OF ACTION**

**(Declaratory Relief)**

**(Against All Defendants)**

41.     Plaintiff realleges each and every allegation contained in paragraphs 1 through 40, inclusive, of this Complaint as through set forth in full herein.

42.     Defendants CB EQUITIES, LLC and AMERICAN BROKERS CONDUIT CORPORATION improperly and without legal authority caused to enter into a stipulated judgment whereby the 2007 Deed of Trust was purportedly nullified, cancelled and extinguished.  These Defendants caused to be recorded the stipulated judgment.

43.     Plaintiff has a current controversy as a result of the recording of the Stipulated Judgment which has created a title dispute with reference to the property and the rights and interest in the Property as a result of the wrongful entering into and subsequent recording of the stipulated judgment.

44.      Plaintiff seeks the Court to declare the rights of the parties relative to this Property.  Plaintiff also seeks the Court to declare the stipulated judgment void and that the judgment is without legal force and effect.

WHEREFORE, Plaintiff prays judgment as follows:

1.     For general and special damages in an amount to be proven at trial, but in no event less than the jurisdictional minimum of this Court;

2.     For a declaration that the stipulated judgment entered into by this court on November 26, 2012 in cause number C12-5449 and subsequently recorded in the Official Records of Contra Costa County on November 29, 2012 as document number 2012-0304420-00 is void and without legal force or effect.

3.     For an order that the Stipulated Judgment entered by this Court on November 26, 2012 and recorded in the Official Records of Contra Costa County on November 29, 2012 as document number 2012-0304420-00 is cancelled and extinguished.

4.     For costs of suit;

5.     For punitive and exemplary damages;

\\IRVLAW1\ProLaw Files\Document\136113.docx

1        6.      For attorneys' fees and costs according to proof; and

2        7.      For such other and further relief as the court may deem proper.

3    Dated: August 19, 2015                    HOUSER & ALLISON
                                               A Professional Corporation
4

5

6                                              Denetta EJ Scott
                                               Attorney for Plaintiff
7                                              DEUTSCHE BANK NATIONAL TRUST
                                               COMPANY, AS INDENTURE TRUSTEE FOR
8                                              AMERICAN HOME MORTGAGE
                                               INVESTMENT TRUST 2007-1
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

\\IRVLAW1\ProLaw Files\Document\136113.docx

# EXHIBIT A

RECORDING REQUESTED BY:

NIKHIL BHATNAGAR

WHEN RECORDED MAIL TO:

CB EQUITIES, LLC
420 WHITNEY AVE
VALLEJO, CA 94589

CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
DOC- 2012-0304420-00

Check Number
Thursday, NOV 29, 2012 15:41:40
MOD   $32.00|REC   $42.00|FTC   $31.00
RED   $1.00|ERD   $1.00|
Ttl Pd   $107.00      Rcpt # 0001488971
                                    rrc/R9/1-32

# DOCUMENT TITLE

## JUDGMENT FOR PLAINTIFF

1    NIKHIL BHATNAGAR (SBN #275569)
     11639 Birch Spring Ct.
2    Cupertino CA 95014
     Tel: 408-507-9604
3    bhatnagar.nikhil84@gmail.com

4    Attorney for Plaintiff
     CB EQUITIES, LLC
5

6    ALLA BARBALAT (SBN #278975)
     317 Washington St., Ste. 124
7    Oakland, CA 94607
     Phone: 510-550-5267
8    Fax: 510-590-9485

9    Attorney for Defendant
     AMERICAN BROKERS
10   CONDUIT CORPORATION

**ECF DOCUMENT**

I hereby attest and certify this is a printed copy of a document which was electronically filed with the United States District Court for the Northern District of California.

Date Filed: 11/26/2012

RICHARD W. WIEKING, Clerk

By: _____ Deputy Clerk

11              UNITED STATES DISTRICT COURT

12              NORTHERN DISTRICT OF CALIFORNIA

13                    Oakland Division

14

15   CB EQUITIES, LLC, a Wyoming Limited         Case No.: C-12-5449
     Liability Company,
16                                               **JOINT SETTLEMENT STIPULATION**
                    Plaintiff,                   **AND [~~PROPOSED~~] JUDGMENT**
17
                    vs.
18

19   AMERICAN BROKERS CONDUIT
     CORPORATION AND DOES 1-10,
20
                    Defendants.
21
              Pursuant to Civil Local Rule 7-12, Plaintiff, CB EQUITIES, LLC ("Plaintiff"), and
22
     Defendant, AMERICAN BROKERS CONDUIT CORPORATION ("Defendant") hereby
23
     stipulate to a settlement as follows.
24
              WHEREAS, a certain deed of trust dated January 24, 2007, and recorded on January
25
     30, 2007, as Document Number 2007-0028086-00 ("deed of trust"), designates
26
     AMERICAN BROKERS CONDUIT CORPORATION as the lender therein;
27

28
                                               1
         JOINT SETTLEMENT STIPULATION AND [~~PROPOSED~~] JUDGMENT, CASE NO. C-12-5449

Case 4:12-cv-05449-DMR   Document 5   Filed 11/26/12   Page 2 of 5

1    WHEREAS, the deed of trust purports to secure a loan against the property known as 223

2   Verde Mesa, Danville, California.

3    WHEREAS, AMERICAN BROKERS CONDUIT CORPORATION never loaned money

4   with respect to the deed of trust;

5    WHEREAS, AMERICAN BROKERS CONDUIT CORPORATION has no objection to

6   this Court's Judgment expunging, cancelling and nullifying the deed of trust upon the terms

7   hereinafter set forth;

8    NOW, THEREFORE, THE PARTIES HEREBY STIPULATE AND JOINTLY

9   REQUEST, by and through their respective counsel of record, as follows:

10    1.    Upon the Court's entry of Judgment upon this Joint Settlement Stipulation and

11   Proposed Judgment, and in consideration of the same, each party releases the other party and

12   their parents, subsidiaries, divisions, affiliated corporations, trustees, directors, officers,

13   stockholders, partners, agents, servants, employees, representatives, attorneys, heirs, executors,

14   administrators, successors and assigns, on any and all other claims, debts, liabilities, demands,

15   obligations, promises, acts, agreements, costs, expenses, damages, actions, and causes of action,

16   of whatsoever kind or nature, whether known or unknown, suspected or unsuspected, from the

17   beginning of time to the date of entry of Judgment upon this Joint Settlement Stipulation and

18   Proposed Judgment, and thereafter to the consummation of settlement with respect to all

19   interactions and transactions between these parties upon which Case No. C-12-5449 is based,

20   including any claims of malicious prosecution and abuse of process.

21    2.    Each party shall bear its own costs and attorney's fees incurred in Case No. C-

22   12-5449.

23    3.    Each party expressly agrees to waive appeal of Case No. C-12-5449 and each

24   party agrees that the Judgment herein will be final for all purposes.

25    4.    Each party hereto warrants and represents that they have read and that they

26

27

28

2

JOINT SETTLEMENT STIPULATION AND [PROPOSED] JUDGMENT, CASE NO. C-12-5449

1 | understand all of the provisions contained herein.

2 |      5.     This Joint Settlement Stipulation and Proposed Judgment is signed freely by each

3 | party. Each person signing below in a representative capacity for a party has authority to bind

4 | that party.

5 |      6.     Each party hereto represents and warrants that they have consulted with their

6 | own attorney concerning and participated in the drafting of each of the terms contained in this

7 | document. No inference, assumption, or presumption shall be drawn from the fact that one

8 | party or its attorney prepared this Joint Settlement Stipulation and Proposed Judgment.

9 |      7.     It shall be conclusively presumed that each party participated in the preparation

10 | of this Joint Settlement Stipulation and Proposed Judgment.

11 |      8.     Each party hereto agrees that this document, and the interpretation thereof, shall

12 | be governed by the laws of the State of California.

13 |      9.     The site of venue for all purposes in interpretation and enforcement of this

14 | Agreement is in Contra Costa County, California.

15 |      10.     Each of the parties hereto understands that each of the terms and conditions set

16 | forth herein are contractual and material to this Joint Settlement Stipulation and Proposed

17 | Judgment as a whole, and that none of the terms or conditions contained herein is a mere

18 | recital.

19 |

20 |      11.     This Joint Settlement Stipulation and Proposed Judgment is the entire agreement

21 | between the parties. If any part of this Joint Settlement Stipulation and Proposed Judgment is

22 | determined to be unenforceable, the remaining provisions shall be enforced.

23 |      12.     This Joint Settlement Stipulation and Proposed Judgement may be executed in

24 | counterparts, each of which will be deemed an original. Facsimile signatures will have the same

25 | force and effect as original signatures.

26 |      13.     Each party shall, upon the other's reasonable request, take all steps and execute,

27 |

28 |

3

JOINT SETTLEMENT STIPULATION AND [PROPOSED] JUDGMENT, CASE NO. C-12-5449

1  acknowledge, and deliver to the others all further instruments necessary or expedient to

2  effectuate the purposes of this Joint Settlement Stipulation and Proposed Judgment.

3     14.     Each party will further not take any action which would interfere with the

4  performance of this Joint Settlement Stipulation and Proposed Judgment or which would

5  adversely affect any of the rights provided herein.

6                    ATTESTATION PER GENERAL ORDER 45

7     I, Nikhil Bhatnagar, am the ECF User whose ID and password are being used to file this

8  Joint Settlement Stipulation and Proposed Order. In compliance with General Order 45, X.B., I

9  hereby attest that the counsel listed above have concurred with this filing.

10     SO REQUESTED AND STIPULATED:

11

12  Dated: November 15, 2012                 NIKHIL BHATNAGAR

13                                          By:  /s/ Nikhil Bhatnagar
                                               Nikhil Bhatnagar
14                                             Attorney for Plaintiff
                                               CB EQUITIES, LLC
15

16

17  Dated: November 15, 2012                 ALLA BARBALAT

18                                          By:  /s/ Alla Barbalat
                                               Alla Barbalat
19                                             Attorney for Defendant
20                                             AMERICAN BROKERS CONDUIT
                                               CORPORATION
21

22  ///

23  ///

24  ///

25  ///

26  ///

27

28
                                        4
    JOINT SETTLEMENT STIPULATION AND [PROPOSED] JUDGMENT, CASE NO. C-12-5449

JUDGMENT

PURSUANT TO STIPULATION, IT IS SO ORDERED, ADJUDGED AND DECREED:

The deed of trust dated January 24, 2007, and recorded on January 30, 2007, as Document Number 2007-0028086-00 is hereby expunged, cancelled and nullified.

Dated: November 26, 2012          UNITED STATES DISTRICT COURT

BY: _____
    Hon. Donna M. Ryu
    United States Magistrate Judge

JOINT SETTLEMENT STIPULATION AND [PROPOSED] JUDGMENT, CASE NO. C-12-5449

EXHIBIT A

Case 4:15-cv-03809-DMR   Document 1   Filed 11/26/12   Page 20 of 36

Recording Requested By:

6707000Z-RT

Return To:
American Brokers Conduit
4650 Regent Blvd., Suite 100
Irving, TX 75063-2250

CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
DOC- 2007-0028086-00
Acct 10- New Century Title
Tuesday, JAN 30, 2007 08:00:00
MIC    $1,001|MOD     $24.00|REC     $28.00
FTC    ,$23.00|DAF      $1.00|REF      $0.20
Ttl Pd     $78.00        Nbr-0003578184
                         1ar/R2/1-24

Prepared By:
Mary Storkan
1390 Willow Pass Road
Suite 560
Concord, CA
94520

24

---------------------- [Space Above This Line For Recording Data] ----------------------

## DEED OF TRUST

MIN  100024200015928209

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated January 22, 2007 together with all Riders to this document.
(B) "Borrower" is Bill G Williams, an unmarried man

Borrower is the trustor under this Security Instrument.
(C) "Lender" is American Brokers Conduit

Lender is a Corporation
organized and existing under the laws of State of New York

DOC #:324541      APPL #:0001592320
CALIFORNIA -Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS   Form 3005  1/01

-6A(CA) (0005).01     UM31 1904.01    Initials:
Page 1 of 15
VMP MORTGAGE FORMS - (800)521-7291

Case 4:12-cv-03440-DMR   Document 81   Filed 11/20/12   Page 83 of 326

028086

Lender's address is  538  Broadhollow Road,  Melville, NY  11747

(D) "Trustee" is New Century Title

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated  January 22, 2007
The Note states that Borrower owes Lender  Six Hundred Eighty Eight Thousand and
No/100                                                                            Dollars
(U.S. $688,000.00 .        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than      February 1, 2047

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |
| PREPAYMENT RIDER | | |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

DOC  #:324542                     APPL #:0001592920

-6A(CA) (0005).01                 Page 2 of 15                      Initials: _____        Form 3005  1/01

Case 4:12-cv-03409-DMR   Document 31   Filed 11/25/12   Page 94 of 326

028086

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County _____ of Contra Costa
[Type of Recording Jurisdiction]                     [Name of Recording Jurisdiction]
legal description attached hereto and made a part hereof

Parcel ID Number:  195-060-008                          which currently has the address of
223 Verde Mesa Drive                                                                      [Street]
Danville                                               [City], California 94526          [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

DOC #:1324943                    APPL #:0001892820

-6A(CA) (0005).01              Page 3 of 15                                    Form 3005  1/01

028086

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay to Lender Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

DOC  #:324544                         APPL #:0001992820

-6A(CA) (0207).01                        Page 4 of 15                          Form 3005  1/01

028086

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10

028086

days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

DOC  #:324646                    APPL #:0001592820

VMP -6A(CA) (0005).01                    Page 6 of 15                    Form 3005  1/01

Initials ___

028086

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

DOC   #:324547                    APPL #:0001322820

-6A(CA) (0005).01                    Page 7 of 15                    Initials:                    Form 3005  1/01

028086

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage

DOC  #:324346                                    APPL #:0001592820

-6A(CA) (0207).01                       Page 8 of 15                      Form 3005  1/01

028086

Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or

DOC #:124549                                   APPL #:0001932820

-6A(CA) (0008).01                          Page 9 of 15                          Form 3005  1/01

Case 4:15-cv-03809-DMR   Document 1   Filed 11/26/12   Page 61 of 126

028086

any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict

DOC  #:324550                    APPL #:0001592630

(logo) -6A(CA) (0005).01              Page 10 of 15              Form 3005  1/01

Initials ____

Case 4:12-cv-05940-EDMR   Document 81   Filed 11/26/12   Page 12 of 16

028086

shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

Case 4:12-cv-05409-DMR   Document 61   Filed 11/26/12   Page 13 of 26

028086

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan-servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

DOC #:324553                 APPL #:0002592820

VMP-6A(CA) (0005).01              Page 13 of 15              Initials: [signature]              Form 3005  1/01

Case 4:15-cv-03809-DMR   Document 1   Filed 08/20/15   Page 31 of 92

028086

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

DOC #:324553                      APPL #:0001592820

Initials

-6A(CA) (0005).01                 Page 13 of 15                                    Form 3005  1/01

028086

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____(Seal)
                                    Bill G Williams          -Borrower

_____          _____(Seal)
                                                             -Borrower

_____(Seal)    _____(Seal)
-Borrower                                                    -Borrower

_____(Seal)    _____(Seal)
-Borrower                                                    -Borrower

_____(Seal)    _____(Seal)
-Borrower                                                    -Borrower

DOC  #:334854
@D,-6A(CA) (0005).01              APPL #:0001592820                Form 3005  1/01
                                   Page 14 of 15

Case 4:12-cv-05949-DMR   Document 61   Filed 11/26/12   Page 16 of 26

028086

State of California
County of CONTRA COSTA } ss.

On JANUARY 24, 2007 before me, T. ALMAN, NOTARY PUBLIC
personally appeared

Bill G Williams

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.



T. ALMAN
COMM. # 1397885
NOTARY PUBLIC • CALIFORNIA
CONTRA COSTA COUNTY
My Comm. Exp. Feb. 2, 2007

(Seal)

DOC    #:324355                    APPL #:0001592820

-6A(CA) (0001).01                  Page 15 of 15               Form 3005  1/01

028086

Exhibit A

All that certain real property situated in the City of Danville, County of Contra Costa, State of California, described as follows:

Lot 14, Map of Verde Mesa, filed November 17, 1952, Map Book 48, Page 44, Contra Costa County Records.

Commonly known as:          223 Verde Mesa Drive
APN:                        195-080-008

028086

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Prepayment Rider.

_____
Bill G Williams

Case 4:12-cv-05449-DMR   Document 31   Filed 11/16/12   Page 23 of 26

028086

## ADJUSTABLE RATE RIDER

### (12-MTA Index - Payment and Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this __22nd__ day of __January, 2007__, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to _____ __American Brokers Conduit__

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

__223 Verda Mesa Drive, Danville, CA  94526__

(Property Address)

THIS RIDER CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. BECAUSE MY INTEREST RATE WILL CHANGE MORE FREQUENTLY THAN MY MONTHLY PAYMENT, AND BECAUSE THERE ARE LIMITATIONS ON MY MONTHLY PAYMENT INCREASES, THE AMOUNT OF MY MONTHLY PAYMENT MAY NOT FULLY PAY THE INTEREST THAT ACCRUES. AS A RESULT, THE PRINCIPAL AMOUNT I MUST REPAY COULD BE LARGER THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE THAN __125.000%__ OF THE ORIGINAL AMOUNT (OR $ __860,000.00__ ). MY INTEREST RATE CAN NEVER EXCEED THE LIMIT STATED IN THE NOTE AND RIDER. A BALLOON PAYMENT MAY BE DUE AT MATURITY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

Interest will be charged on unpaid Principal until the full amount has been paid. I will pay interest at a yearly rate of __1.000__ % until __January 31, 2007__, and the initial monthly payment provided for in the Note will be based on this rate. Commencing __February 1, 2007__, I will pay interest at a yearly rate of __8.303__ %. Thereafter, the interest rate I will pay may change in accordance with Section 4 of the Note.

Page 1 of 5                                    AHM2029R(MULT) (0106)

Doc # 944735/Image: 944735.prn  App# 0001592820

Case 4:12-cv-05949-EDMR   Document 81   Filed 11/19/12   Page 23 of 26

028086

Section 4 of the Note provides for changes in the interest rate and monthly payment as follows:

4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES

   (A) Change Dates

   The interest rate I will pay may further change on the _____1st_____ day of _____March, 2007_____, and on that day every month thereafter. Each such date on which my interest rate could change is called a "Change Date."

   (B) The Index

   On each Change Date, my interest rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H. 15)" (the "Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.

   The most recent Index figure available as of the date 15 days before each Change Date is called the "Current Index".

   If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

   (C) Interest Rate Change

   Before each Change Date, the Note Holder will calculate my new interest rate by adding ____Three and 450 Thousandths____ percentage points ___3.450___ % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-thousandth of one percentage point (0.001%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. In the event a new index is selected, pursuant to paragraph 4(B), a new Margin will be determined. The new Margin will be the difference between the average of the old Index for the most recent three year period which ends on the last date the Index was available plus the Margin on the last date the old Index was available and the average of the new Index for the most recent three year period which ends on that date (or if not available for such three year period, for such time as it is available). This difference will be rounded to the next higher 1/8 of 1%.

   (D) Interest Rate Limit

   My interest rate will never be greater than ___9.950___ % ("Cap"), except that following any sale or transfer of the property which secures repayment of this Note after the first interest rate Change Date, the maximum interest rate will be the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of such sale or transfer.

   (E) Payment Change Dates

   Effective every year commencing _____March 1st, 2008_____, and on the same date each twelfth month thereafter ("Payment Change Date"), the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the projected Principal balance I am expected to owe as of the Payment Change Date in full on the maturity date at the interest rate that will become effective one month prior to the Payment Change Date in substantially equal payments. The result of this calculation is the new amount of my monthly

Page 2 of 5                                   AHM2029R(MULT) (0106)

Doc # 944736/Image: 944736.prn   App# 0001892830

Case 4:12-cv-05949-DMR   Document 81   Filed 11/26/12   Page 22 of 26

028086

payment, subject to Section 4(F) below, and I will make payments in the new amount until the next Payment Change Date unless my payments are changed earlier under Section 4(H) of the Note.

(F) Monthly Payment Limitations

Unless Section 4(H) and 4(I) below apply, the amount of my new monthly payment, beginning with a Payment Change Date, will be limited to 7 ½% more or less than the amount I have been paying. This payment cap applies only to the principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument.

(G) Changes in My Unpaid Principal Due to Negative Amortization or Accelerated

Amortization

Since my initial monthly payment will be based on the Initial Rate, which may be different than the Subsequent Rate, my initial monthly payment could be less or greater than the amount of the interest portion (the "Interest Portion") of the monthly principal and interest payment that would be sufficient to repay the unpaid Principal I owe in full on the maturity date in substantially equal payments. Additionally, since my payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 4(F), my monthly payment could be less or greater than the amount of the Interest Portion. For each month that the monthly payment is less than the Interest Portion, the Note Holder will subtract the monthly payment from the amount of the Interest Portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the current interest rate. For each month that the monthly payment is greater than the Interest Portion, the Note Holder will apply the excess towards a principal reduction of the Note.

(H) Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid Principal can never exceed a maximum amount equal to _____125.000%_ of the principal amount originally borrowed. In the event my unpaid Principal would otherwise exceed that _____125.000%_ limitation, I will begin paying a new monthly payment until the next Payment Change Date notwithstanding the 7 ½% annual payment increase limitation. The new monthly payment will be an amount which would be sufficient to repay my then unpaid Principal in full on the maturity date at the interest rate in effect one month prior to the payment due date in substantially equal payments.

(I) Required Full Monthly Payment

On the _____five____ anniversary of the due date of the first monthly payment, and on that same day every _____five____ year thereafter, the monthly payment will be adjusted without regard to the payment cap limitation in Section 4(F).

(J) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any questions I may have regarding the notice.

(K) Failure to Make Adjustments

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold Note Holder responsible for any damages to me which may result from Note

AHM2029R(MULT) (0106)

Doc # 944737/Image: 944737.prn   Appl# 0001592820

028086

Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid Principal.

B.  TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.  If all or any part of the Property or any interest in the Property is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if exercise is prohibited by Applicable Law.  Lender also shall not exercise this option if:  (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee;  (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Agreement or other obligations related to the Note or other loan document is acceptable to Lender, (c) Assuming party executes Assumption Agreement acceptable to Lender at its sole choice and discretion, which Agreement may include an increase to Cap as set forth below and (d) payment of Assumption Fee if requested by Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption, and Lender may increase the maximum interest rate limit to the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of the transfer.  Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument.  Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has entered into a written assumption agreement with transferee and formally releases Borrower.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.  Borrower agrees to execute any document necessary to reform this Agreement to accurately reflect the terms of the Agreement between Borrower and Beneficiary or if the original Note, Trust Deed or other document is lost, mutilated or destroyed.

AHM2029R(MULT) (0106)

Doc # 944738/Image: 944738.prn   Appl# 0001593820

Case 4:12-cv-09409-EDMR   Document 81   Filed 11/16/12   Page 39 of 326

028086

_____ (Seal)          _____ (Seal)
Bill G Williams              -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                             -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                             -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                             -Borrower                                    -Borrower

AHM2029R(MULT) (9106)

Doc # 944739/Image: 944739.prn  App# 0001502820

# ILLEGIBLE NOTARY SEAL DECLARATION

### (Government Code 27361.7)   028086

I declare under penalty of perjury that the notary seal on the document to which
this statement is attached, reads as follows:

Name of Notary:  T. Alman

Commission Number:  1397885

Notary Public State:  California

County of Commission:  Contra Costa

Commission Expires:  Feb 2, 2007

Signature of Declarant:  _Richard Tark_

Print Name of Declarant:  Richard Tarkon

City and State of Declarant:  San Ramon, CA

Date Signed:  1-25-07

End of Document

I hereby certify that this is a true
And correct copy of the original
On file in this office

ATTEST OCT 18 2012

Stephen L. Weir
County Clerk
Contra Costa County, California

By _____ Deputy Clerk

I hereby certify that this is a true
And correct copy of the original
On file in this office

ATTEST  JUL 06 2015

Joseph E. Canciamilla
County Clerk
County Centre Costa County, California
By_____ Deputy Clerk

# EXHIBIT B

Recording Requested By:

6707000Z-RT

Return To:
American Brokers Conduit
4650 Regent Blvd., Suite 100
Irving, TX 75063-2250

CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
DOC- 2007-0028086-00
Acct 10- New Century Title
Tuesday, JAN 30, 2007 08:00:00
MIC   $1.00|MOD  $24.00|REC  $28.00
FTC   $23.00|DAF   $1.00|REF   $0.20
Ttl Pd   $78.00        Nbr-0003578184
                       lmm/R2/1-2d

Prepared By:
Mary Storkan
1390 Willow Pass Road
Suite 560
Concord, CA
94520

——————— [Space Above This Line For Recording Data] ———————

## DEED OF TRUST

MIN  100024200015928209

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated January 22, 2007 together with all Riders to this document.
(B) "Borrower" is Bill G Williams, an unmarried man

Borrower is the trustor under this Security Instrument.
(C) "Lender" is American Brokers Conduit

Lender is a Corporation
organized and existing under the laws of State of New York

DOC #:324541                                 APPL #:0001392820
CALIFORNIA -Single  Family- Fannie  Mae/Freddie  Mac UNIFORM INSTRUMENT  WITH MERS   Form 3005 1/01
-6A(CA) (0005).01                                Initials:
UM31 9905.01
Page 1 of 15
VMP MORTGAGE FORMS - (800)521-7291

028086

Lender's address is  538 Broadhollow Road, Melville, NY  11747

(D) "Trustee" is New Century Title

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated  January 22, 2007
The Note states that Borrower owes Lender  Six Hundred Eighty Eight Thousand and
No/100                                                           Dollars
(U.S. $688,000.00      ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than     February 1, 2047

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |

PREPAYMENT RIDER

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

DOC  #:324542                    APPL #:0001592820

Initials:

@-6A(CA) (0005).01              Page 2 of 15              Form 3005  1/01

028086

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in   trust,   with   power   of   sale,   the   following   described   property   located   in   the County                                                              of   Contra Costa                                    :
    [Type of Recording Jurisdiction]                           [Name of Recording Jurisdiction]
legal description attached hereto and made a part hereof

Parcel ID Number:   195-080-008                                    which currently has the address of
223 Verde Mesa Drive                                                                        [Street]
Danville                                                      [City], California 94526
("Property Address");                                                              [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

DOC #:324943                    APPL #:0001592820                                      Initials

®-6A(CA) (0005).01                    Page 3 of 15                                      Form 3005 1/01

028086

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

028086

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10

DOC   #:324545                         APPL #:0001592820

Ⓜ️-6A(CA) (0005).01                    Page 5 of 15                         Initials: [signature]             Form 3005  1/01

028086

days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

DOC  #:324546                    APPL #:0001592820

Initials:

@D -6A(CA) (0005).01                    Page 6 of 15                    Form 3005  1/01

028086

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

DOC #:324547                        APPL #:0001592820

MOD-6A(CA) (0005).01                        Page 7 of 15                        Initials: [signature]                        Form 3005  1/01

028086

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage

DOC   #:324548                              APPL #:0001592820

Initials: [initials]

VMP®-6A(CA) (0005).01                       Page 8 of 15                              Form 3005   1/01

028086

Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or

DOC  #:324949                                  APPL #:0001592820

Initials: ___

028086

any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several, However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict

DOC  #:324560                      APPL #:0001592820

MFD-6A(CA) (0005).01              Page 10 of 15                     Form 3005  1/01

028086

shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

DOC  #:324551                    APPL #:0001592820

⨌MD -6A(CA) (0005).01                Page 11 of 15                Initials: _____        Form 3005  1/01

028086

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

028086

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

DOC #:324553                    APPL #:0001692820

VMP -6A(CA) (0005).01                    Page 13 of 15                    Initials:                    Form 3005  1/01

028086

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____                     _____(Seal)
                                                    Bill G Williams                    -Borrower

_____                    _____(Seal)
                                                                                       -Borrower

_____(Seal)                    _____(Seal)
                         -Borrower                                                     -Borrower

_____(Seal)                    _____(Seal)
                         -Borrower                                                     -Borrower

_____(Seal)                    _____(Seal)
                         -Borrower                                                     -Borrower

028086

State of California
County of *Contra Costa* } ss.

On *January 24, 2007*, before me, *T. Alman, Notary Public*

Bill G Williams

personally appeared

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal).



T. ALMAN
COMM. # 1397885
NOTARY PUBLIC · CALIFORNIA
CONTRA COSTA COUNTY
My Comm. Exp. Feb. 2, 2007

DOC #:324555              APPL #:0001592820

VMP-6A(CA) (0005).01        Page 15 of 15          Form 3005   1/01

028086

### Exhibit A

'All that certain real property situated in the City of Danville, County of Contra Costa, State of California, described as follows:

Lot 14, Map of Verde Mesa, filed November 17, 1952, Map Book 48, Page 44, Contra Costa County Records.

Commonly known as:          223 Verde Mesa Drive
APN:                        195-080-008

028086

Loan #: __0001592820__

## PREPAYMENT RIDER TO SECURITY INSTRUMENT

THIS PREPAYMENT RIDER is made this __22nd__ of __January, 2007__, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to __American Brokers Conduit__
_____(the "Lender")
of the same date and covering the Property described in the Security Instrument and located at:

__223 Verde Mesa Drive, Danville, CA 94526__
[Property Address]

PREPAYMENT COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

I have the right to make payments of principal at any time before they are due. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

Except as provided below, I may make a Full Prepayment or a Partial Prepayment at any time without paying any penalty. If within the first __three__ ( __3__ ) year(s) after the execution of the Note, I make a Full Prepayment or Partial Prepayment(s) of more than twenty percent (20%) of the original principal amount in a twelve month period immediately preceding the date of prepayment, I will pay a prepayment charge in an amount equal to the payment of six (6) months' advance interest on the amount prepaid which is in excess of twenty percent (20%) of the original principal amount of the Note in that twelve month period. Interest will be calculated using the rate in effect at the time of prepayment.

If I make a partial prepayment equal to one or more of my monthly payments, the due date of my next scheduled monthly payment may be advanced no more than one month. If I make a partial prepayment in any other amount, I must still make all subsequent monthly payments as scheduled.

## NOTICE TO THE BORROWER
Do not sign this Prepayment Rider before you read it. This Prepayment Rider provides for the payment of a penalty if you wish to repay the loan prior to the date provided for repayment in the Note.

028086

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Prepayment Rider.

_____
Bill G Williams

028086

## ADJUSTABLE RATE RIDER

### (12-MTA Index - Payment and Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this <u>22nd</u> day of <u>January, 2007</u>, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to _____ <u>American Brokers Conduit</u>

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

<u>223 Verde Mesa Drive, Danville, CA  94526</u>

(Property Address)

THIS RIDER CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. BECAUSE MY INTEREST RATE WILL CHANGE MORE FREQUENTLY THAN MY MONTHLY PAYMENT, AND BECAUSE THERE ARE LIMITATIONS ON MY MONTHLY PAYMENT INCREASES, THE AMOUNT OF MY MONTHLY PAYMENT MAY NOT FULLY PAY THE INTEREST THAT ACCRUES. AS A RESULT, THE PRINCIPAL AMOUNT I MUST REPAY COULD BE LARGER THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE THAN <u>125.000%</u> OF THE ORIGINAL AMOUNT (OR $ <u>860,000.00</u> ). MY INTEREST RATE CAN NEVER EXCEED THE LIMIT STATED IN THE NOTE AND RIDER. A BALLOON PAYMENT MAY BE DUE AT MATURITY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

### A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

Interest will be charged on unpaid Principal until the full amount has been paid. I will pay interest at a yearly rate of <u>1.000</u> % until <u>January 31, 2007</u>, and the initial monthly payment provided for in the Note will be based on this rate. Commencing <u>February 1, 2007</u> I will pay interest at a yearly rate of <u>8.383</u> %. Thereafter, the interest rate I will pay may change in accordance with Section 4 of the Note.

Page 1 of 5

AHM2029R(MULT) (0106)

Doc # 944735/Image: 944735.prn  App# 0001592820

028086

Section 4 of the Note provides for changes in the interest rate and monthly payment as follows:

4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

    (A) Change Dates

    The interest rate I will pay may further change on the _____1st_____ day of ____March, 2007_____, and on that day every month thereafter. Each such date on which my interest rate could change is called a "Change Date."

    (B) The Index

    On each Change Date, my interest rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H. 15)" (the "Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.

    The most recent Index figure available as of the date 15 days before each Change Date is called the "Current Index".

    If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

    (C) Interest Rate Change

    Before each Change Date, the Note Holder will calculate my new interest rate by adding __Three and 450 Thousandths_____ percentage points _3.450_____ % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-thousandth of one percentage point (0.001%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. In the event a new Index is selected, pursuant to paragraph 4(B), a new Margin will be determined. The new Margin will be the difference between the average of the old Index for the most recent three year period which ends on the last date the Index was available plus the Margin on the last date the old Index was available and the average of the new Index for the most recent three year period which ends on that date (or if not available for such three year period, for such time as it is available). This difference will be rounded to the next higher 1/8 of 1%.

    (D) Interest Rate Limit

    My interest rate will never be greater than _____9.950__% ("Cap"), except that following any sale or transfer of the property which secures repayment of this Note after the first interest rate Change Date, the maximum interest rate will be the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of such sale or transfer.

    (E) Payment Change Dates

    Effective every year commencing _____March 1st, 2008_____, and on the same date each twelfth month thereafter ("Payment Change Date"), the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the projected Principal balance I am expected to owe as of the Payment Change Date in full on the maturity date at the interest rate that will become effective one month prior to the Payment Change Date in substantially equal payments. The result of this calculation is the new amount of my monthly

028086

payment, subject to Section 4(F) below, and I will make payments in the new amount until the next Payment Change Date unless my payments are changed earlier under Section 4(H) of the Note.

(F) Monthly Payment Limitations

Unless Section 4(H) and 4(I) below apply, the amount of my new monthly payment, beginning with a Payment Change Date, will be limited to 7 ½% more or less than the amount I have been paying. This payment cap applies only to the principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument.

(G) Changes In My Unpaid Principal Due to Negative Amortization or Accelerated

Amortization

Since my initial monthly payment will be based on the Initial Rate, which may be different than the Subsequent Rate, my initial monthly payment could be less or greater than the amount of the interest portion (the "Interest Portion") of the monthly principal and interest payment that would be sufficient to repay the unpaid Principal I owe in full on the maturity date in substantially equal payments. Additionally, since my payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 4(F), my monthly payment could be less or greater than the amount of the Interest Portion. For each month that the monthly payment is less than the Interest Portion, the Note Holder will subtract the monthly payment from the amount of the Interest Portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the current interest rate. For each month that the monthly payment is greater than the Interest Portion, the Note Holder will apply the excess towards a principal reduction of the Note.

(H) Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid Principal can never exceed a maximum amount equal to ___125.000%___ of the principal amount originally borrowed. In the event my unpaid Principal would otherwise exceed that ___125.000%___ limitation, I will begin paying a new monthly payment until the next Payment Change Date notwithstanding the 7 ½% annual payment increase limitation. The new monthly payment will be an amount which would be sufficient to repay my then unpaid Principal in full on the maturity date at the interest rate in effect one month prior to the payment due date in substantially equal payments.

(I) Required Full Monthly Payment

On the ___five___ anniversary of the due date of the first monthly payment, and on that same day every ___Five___ year thereafter, the monthly payment will be adjusted without regard to the payment cap limitation in Section 4(F).

(J) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any questions I may have regarding the notice.

(K) Failure to Make Adjustments

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold Note Holder responsible for any damages to me which may result from Note

Page 3 of 5

AHM2029R(MULT) (0106)

028086

Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid Principal.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser. If all or any part of the Property or any interest in the Property is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Agreement or other obligations related to the Note or other loan document is acceptable to Lender, (c) Assuming party executes Assumption Agreement acceptable to Lender at its sole choice and discretion, which Agreement may include an increase to Cap as set forth below and (d) payment of Assumption Fee if requested by Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption, and Lender may increase the maximum interest rate limit to the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of the transfer. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has entered into a written assumption agreement with transferee and formally releases Borrower.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider. Borrower agrees to execute any document necessary to reform this Agreement to accurately reflect the terms of the Agreement between Borrower and Beneficiary or if the original Note, Trust Deed or other document is lost, mutilated or destroyed.

AHM2029R(MULT) (0106)

Doc # 944738/Image: 944738.prn   App# 0001592820

028086

_____ (Seal)        _____ (Seal)
Bill G Williams    -Borrower                       -Borrower

_____ (Seal)        _____ (Seal)
                   -Borrower                       -Borrower

_____ (Seal)        _____ (Seal)
                   -Borrower                       -Borrower

_____ (Seal)        _____ (Seal)
                   -Borrower                       -Borrower

AHM2029R(MULT) (0106)

Doc # 944739/Image: 944739.prn  App# 0001592820

# ILLEGIBLE NOTARY SEAL DECLARATION

## (Government Code 27361.7)    028086

I declare under penalty of perjury that the notary seal on the document to which this statement is attached, reads as follows:

Name of Notary: _T. Alman_

Commission Number: _1397885_

Notary Public State: _California_

County of Commission: _Contra Costa_

Commission Expires: _Feb 2, 2007_

Signature of Declarant: _Richard Tark_

Print Name of Declarant: _Richard Tarkon_

City and State of Declarant: _San Ramon, CA_

Date Signed: _1-25-07_

End of Document

I hereby certify that this is a true
And correct copy of the original
On file in this office

ATTEST   JUL 06 2015

Joseph E. Canciamilla
County Clerk
County Clerk, Costa County, California
By                                    Deputy Clerk

# EXHIBIT C

Requested and Prepared by:
Power Default Services, Inc.

When Recorded Mail To:
Power Default Services, Inc.
1525 South Beltline
Coppell, Texas 75019

APN: 195-080-008

CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
DOC- 2012-0193811-00
Check Number
Monday, AUG 13, 2012 08:25:22
MOD    $1.00|REG    $11.00|FTC    $0.00
DAF    $2.70|REF    $0.30|RED    $1.00
ERD    $1.00|
Ttl Pd    $17.00    Rcpt # 0001363598
lrc/R8/1-1

---

Loan No.: 0031588098          TS No: 2012-00561          SPACE ABOVE THIS LINE FOR RECORDER'S USE

## ASSIGNMENT OF DEED OF TRUST

1184210

For Value Received, the undersigned corporation hereby grants, assigns, and transfers to:

Deutsche Bank National Trust Company, as Indenture Trustee for American Home Mortgage Investment Trust 2007-1

all beneficial interest under that certain Deed of Trust dated: 1/22/2007 executed by BILL G WILLIAMS, AN UNMARRIED MAN, as Trustor(s), to NEW CENTURY TITLE, as Trustee, and recorded as Instrument No. 2007-0028086-00, on 1/30/2007, in Book , Page  of Official Records, in the office of the County Recorder of Contra Costa County, California together with the Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust.

Date: 7-5-2012

Mortgage Electronic Registration Systems, Inc. as nominee for American Brokers Conduit and its successors or assigns

By: April King
Assistant Secretary          Produced Florida Drivers License as Identification

State of    Florida    } SS
County of    Duval     }

On 7-5-2012 before me, Linda G Bayless personally appeared
April King who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Florida that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature Linda G. Bayless (Seal)
Linda G Bayless

Notary Public State of Florida
Linda G Bayless
My Commission EE140306
Expires 10/23/2015

I hereby certify that this is a true
And correct copy of the original
On file in this office

ATTEST JUL 06 2015

Joseph E. Canciamilla
County Clerk
County Clerk Costa County, California
By_____ Deputy Clerk

# EXHIBIT D

RECORDING REQUESTED BY:

ServiceLink

AND WHEN RECORDED MAIL TO:
Power Default Services, Inc.
1525 South Beltline
Coppell, Texas 75019

CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
DOC- 2012-0193812-00

Check Number
Monday, AUG 13, 2012 08:25:25
MOD      $1.00|REC     $11.00|FTC     $0.00
DAF      $2.70|REF      $0.30|RED     $1.00
ERD      $1.00|
Ttl Pd     $17.00       Rcpt # 0001363599
                                    lrc/R9/1-1

TS No.: 2012-00561   Loan No.: 0031588098

1184210

## SUBSTITUTION OF TRUSTEE

SPACE ABOVE THIS LINE FOR RECORDERS USE

WHEREAS, BILL G WILLIAMS, AN UNMARRIED MAN was the original Trustor, NEW CENTURY TITLE was the original Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC., AS NOMINEE FOR AMERICAN BROKERS CONDUIT was the original Beneficiary under that certain Deed of Trust dated 1/22/2007 and recorded on 1/30/2007 as Instrument No. 2007-0028086-00, in book , page  of Official Records of Contra Costa County, California, and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned substitutes a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

NOW, THEREFORE, the undersigned hereby substitutes Power Default Services, Inc., as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Dated: 8-6-2012

Deutsche Bank National Trust Company, as Indenture Trustee for American Home Mortgage Investment Trust 2007-1, by: Homeward Residential, Inc. f/k/a American Home Mortgage Servicing, Inc., as attorney in fact

By: April King
    Vice President

State of   Florida        ) ss.
County of Duval           )

On 08-06-2012  before me   April King, Linda G Bayless                    (notary public), personally appeared                                                     who proved to me on the basis of satisfactory evidence Produced Florida Drivers License as identification   to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of            Florida          that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature  Linda G Bayless                    (Seal)

            Linda G Bayless

Notary Public State of Florida
Linda G Bayless
My Commission EE140306
Expires 10/23/2015

I hereby certify that this is a true
And correct copy of the original
On file in this office

ATTEST JUL 06 2015

Joseph E. Canciamilla
County Clerk
County, Contra Costa County, California
By _____ Deputy Clerk

# EXHIBIT E

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:
Power Default Services, Inc.
1525 South Beltline
Coppell, Texas 75019

CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
DOC- 2012-0193813-00

Check Number
Monday, AUG 13, 2012 08:25:27
MOD     $3.00|REC    $13.00|FTC     $2.00
DAF     $2.70|REF    $0.30|RED     $1.00
ERD     $1.00|
Ttl Pd    $23.00         Rcpt # 0001363600

TS No.: 2012-00561      Loan No.: 0031588098

1184210

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST
## IMPORTANT NOTICE
## IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,
and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$26,530.97** as of 8/9/2012, and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:
**Homeward Residential, Inc. f/k/a American Home Mortgage Servicing, Inc.**
**C/O Power Default Services, Inc.**
**1525 South Beltline**
**Coppell, Texas 75019**
**Phone: (469) 645-3000**

TS No.: 2012-00561          Loan No.: 0031588098

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

### Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN: That **Power Default Services, Inc.** is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 1/22/2007, executed by **BILL G WILLIAMS, AN UNMARRIED MAN**, as Trustor, to secure certain obligations in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC., AS NOMINEE FOR AMERICAN BROKERS CONDUIT**, as beneficiary, recorded 1/30/2007, as Instrument No. 2007-0028086-00, in Book , Page of Official Records in the Office of the Recorder of Contra Costa County, California describing land therein as: As more fully described on said Deed of Trust.

Including one **NOTE(S) FOR THE ORIGINAL** sum of $688,000.00, that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

Installment of Principal and Interest plus impounds and/or advances which became due on 2/1/2012 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Attempts to contact the borrower have been unsuccessful. A first-class letter was sent to the borrower that included a toll-free contact number for the beneficiary as well as the toll-free telephone number for the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency. In addition, at least three attempts were made to contact the borrower by telephone, followed-up by a certified letter, return receipt requested.

Dated: 8/9/2012

Power Default Services, Inc.

BY: _____

Jessica Drab, Foreclosure Specialist

CALIFORNIA SB 1137 DECLARATION - NOTICE OF DEFAULT- LOAN   0031588098       CASE:
PROPERTY:   223 VERDE MESA DR                                BORROWER:   BILL G WILLIAMS
            DANVILLE CA 94526

PLEASE COMPLETE AND EXECUTE ONLY ONE OF THE BELOW DECLARATION

DECLARATION OF DUE DILIGENCE

DUE DILIGENCE DOCUMENTATION
DUE DILIGENCE COMPLETED: INITIAL CONTACT LETTER SENT: 03/20/12
3 CALL ATTEMPTS MADE:  04/02/12 @ 20:39, 04/06/12 @ 20:22 AND 04/08/12 @ 20:40
NO CONTACT LETTER SENT: 04/17/12

This statement is to certify that the below signed mortgagee, beneficiary or authorized agent has contacted the borrower, tried with due diligence to

Dated: 6/8/12

CINDY ARMSTRONG
ASSISTANT SECRETARY

Signature of Mortgagee, Beneficiary of Authorized Agent

(ONLY COMPLETE THE BELOW DECLARATION OF IF APPLICABLE)

Declaration that Compliance with CCC Section 2923.5(b) is Not Required

This statement is to certify that the below signed mortgagee, beneficiary or authorized agent was not required to comply with CCC Section 2923.5(b) because:

☐ Pursuant to California Civil Code § 2923.5(h)(1), the borrower has surrendered the property as evidence by a letter confirming the surrender or by delivering the keys to the property to the mortgagee, trustee, beneficiary, or authorized agent of the mortgagee, trustee, or beneficiary.

☐ Pursuant to Civil Code § 2923.5(b) and (h)(2), the beneficiary or beneficiary's authorized agent has evidence in its file, and reasonably believes, that the borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to beneficiaries

☐ Pursuant to Civil Code § 2923.5(b) and (h)(3), the beneficiary or the beneficiary's authorized agent verified information that, on or before the date of this declaration, the borrower(s) has filed for bankruptcy, and the proceedings have not finalized. "Finalized" is not defined by § 2923.5(h)(3). For purposes of this Code section, trustee, foreclosure agent and/or their authorized agent are defining the term as either: (1) an order entered on the court's docket closing the file by the court; or, (2) an order entered on the court's docket missing the bankruptcy case. If the beneficiary believes that the bankruptcy's agent interprets "finalized" in another manner please, state the basis upon which the beneficiary believes that the bankruptcy has not been "finalized":

Dated:

By:

**END OF DOCUMENT**

Signature of Mortgagee, Beneficiary of Authorized Agent

I hereby certify that this is a true
And correct copy of the original
On file in this office

ATTEST  JUL 06 2015

Joseph E. Canciamilla
County Clerk
County, Contra Costa County, California
By_____ Deputy Clerk

# EXHIBIT F

RECORDING REQUESTED BY:

Bill Williams

When Recorded Mail Document and
Tax Statement To:

CB EQUITIES, LLC
420 Whitney Ave
Vallejo, CA 94589

Escrow No.
Title Order No.

APN: 195-080-008

CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
DOC- 2012-0256537-00
Wednesday, OCT 17, 2012 10:55:14
MOD    $2.00|REC    $12.00|FTC    $1.00
|RED    $1.00|ERD    $1.00|
Ttl Pd    $17.00    Rcpt # 0001435724
1rc/R9/1-2

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## GRANT DEED

The undersigned grantor(s) declare(s)
Documentary transfer tax is $ __0.00__    City tax $ __0.00__          **FULLY INCUMBERED**
[    ] computed on full value of property conveyed, or
[ X ] computed on full value less value of liens or encumbrances remaining at time of sale,
[    ] Unincorporated Area    City of Danville

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, **Bill Williams**

hereby GRANT(S) to **CB Equities, LLC**, a Wyoming limited liability company.

All that certain real property situated in the City of Danville, County of Contra Costa, State of California, described as
follows:  Lot 14, Map of Verde Mesa, filed November 17, 1952, Map Book 48, Page 44, Contra Costa County Records
Commonly known as 223 Verde Mesa Drive
APN 195-080-008

State of California:

DATED: __10 / 17 / 2012__

STATE OF CALIFORNIA COUNTY OF CONTRA COSTA
ON __Oct 17, 2012__ before me, Stephanie
a. Islas __personally appeared Bill D. Williams

personally known to me (or proved to me on the basis of
satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of which the person(s) acted,
executed the instrument, SIGNED, UNDER PENALTY
OF PERJURY.

Witness my hand and official seal.

Signature _____

_Bill Williams_

MAIL TAX STATEMENT AS DIRECTED ABOVE

FD-13(Rev4/94)                              GRANT DEED

## Certification of Acknowledgement

State of California

County of _Contra Costa_

On _Oct·17+h_ _____,2012 before me, _Stephanie a·_ _Islas_ Notary Public, personally appeared _Bill G. Williams_ _____

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledge to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and seal.

_(signature)_                                    (Seal)

> STEPHANIE A. ISLAS
> COMM. #1965491
> NOTARY PUBLIC ● CALIFORNIA
> CONTRA COSTA COUNTY
> Commission Expires Jan 2, 2016

_____Additional Optional Information_____

Although law does not require the information in this section, it could prevent fraudulent removal and reattachment of this acknowledgement to an unauthorized document and may prove useful to person(s) relying on the attached document.

DESCRIPTION OF THE ATTACHED DOCUMENTS

_Grant Deed APN-195-080-008_

(Title or description of attached document)

Number of pages _2_ Document date _10/17/12_

CAPACITY CLAIMED BY SIGNER

◉ Individual(s)

○ Corporate Officer

○ Partner(s)

○ Attorney-In-Fact

○ Trustee(s)

○ Other_____

_END OF DOCUMENT_



I hereby certify that this is a true
And correct copy of the original
On file in this office

ATTEST JUL 06 2015

Joseph E. Canciamilla
County Clerk
County Contra Costa County, California
By _____ Deputy Clerk

EXHIBIT G

RECORDING REQUESTED BY:
Power Default Services, Inc.

AND WHEN RECORDED MAIL TO
Power Default Services, Inc.
1525 South Beltline
Coppell, Texas 75019

```
CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
DOC- 2012-0298448-00
Check Number
Monday, NOV 26, 2012 09:20:14
MOD    $11.00|REC    $11.00|FTC    $0.00
DAF    $2.70|REF    $0.30|RED     $1.00
ERD    $1.00|
Ttl Pd  $17.00     Rcpt # 0001482248
                        lrc/R5/1-4
```

T.S. No.: 2012-00561          Loan No.: 0031588098 APN: 195-080-008          SPACE ABOVE THIS LINE FOR RECORDER'S USE

118420 **NOTICE OF RESCISSION OF NOTICE OF DEFAULT**

**NOTICE IS HEREBY GIVEN:** That Power Default Services, Inc. is duly appointed Trustee under a Deed of Trust dated 1/22/2007, executed by BILL G WILLIAMS, AN UNMARRIED MAN, as Trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC., AS NOMINEE FOR AMERICAN BROKERS CONDUIT, as Beneficiary, recorded 1/30/2007, as Instrument No.2007-0028086-00, in book , page , of Official Records in the Office of the Recorder of Contra Costa County, California describing land therein as more fully described on the above referenced deed of trust.

Said obligations including one note for the sum of $688,000.00.

Whereas, the present beneficiary under that certain Deed of Trust herein above described, heretofore delivered to the Trustee thereunder written Declaration of Default and Demand for Sale; and Whereas, Notice was heretofore given of breach of obligations for which said Deed of Trust is security and of election to cause to be sold the property therein described; and Whereas, a Notice of Default was recorded on the day and in the book and page set forth below:

Notice was recorded on 8/13/2012 in the office of the Recorder of Contra Costa County, California, Instrument No. 2012-0193813, in Book , Page , of Official Records.

**NOW; THEREFORE, NOTICE IS HEREBY GIVEN** that the present Beneficiary and/or the Trustee, does hereby rescind, cancel and withdraw said Declaration of Default and Demand for Sale and said Notice of Breach and Election to Cause Sale; it being understood, however, that this rescission shall not in any manner be construed as waiving or affecting any breach or default past, present or future under said Deed of Trust, or as impairing any right or remedy thereunder, but is, and shall be deemed to be, only an election, without prejudice, not to cause a sale to be made pursuant to said Declaration and Notice, and shall no way jeopardize or impair any right, remedy or privilege secured to the Beneficiary and/or the Trustee, under said Deed of Trust, nor modify nor alter in any respect any of the terms, covenants, conditions or obligations thereof, and said Deed of Trust and all obligations secured thereby are hereby reinstated and shall be and remain in force and effect the same as if said Declaration of Default and Notice of Breach had not been made and given.

Dated: 11/16/2012                    Power Default Services, Inc.

By: _La'Tricia Hemphill, Trustee Sales Officer_

I hereby certify that this is a true
And correct copy of the original
On file in this office

ATTEST  JUL 06 2015

Joseph E. Canciamilla
County Clerk
County Contra Costa County California
By _____ Deputy Clerk

# EXHIBIT H

RECORDING REQUESTED BY:

ServiceLink

WHEN RECORDED MAIL TO:
Power Default Services, Inc.
1525 South Beltline
Coppell, Texas 75019

CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
DOC- 2012-0298449-00

Check Number
Monday, NOV 26, 2012 09:20:17
MOD     $3.00|REC    $13.00|FTC    $2.00
DAF     $2.70|REF    $0.30|RED    $1.00
ERO     $1.00|
Ttl Pd    $23.00      Rcpt # 0001482250
                                  rec/RB/1-3

TS No.: 2012-00561      Loan No.: 0031588098

1184210

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST
## IMPORTANT NOTICE
## IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,

and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is $36,923.75 as of 11/16/2012, and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:
Deutsche Bank National Trust Company, as Indenture Trustee for American Home Mortgage Investment Trust 2007-1
Homeward Residential, Inc. f/k/a American Home Mortgage Servicing, Inc.
C/O Power Default Services, Inc.
1525 South Beltline
Coppell, Texas 75019
Phone: (469) 645-3000

TS No.: 2012-00561          Loan No.: 0031588098

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.  Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

**Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN:  That **Power Default Services, Inc.** is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 1/22/2007, executed by **BILL G WILLIAMS, AN UNMARRIED MAN**, as Trustor, to secure certain obligations in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC., AS NOMINEE FOR AMERICAN BROKERS CONDUIT**, as beneficiary, recorded 1/30/2007, as Instrument No. 2007-0028086-00, in Book, Page  of Official Records in the Office of the Recorder of **Contra Costa County**, California describing land therein as: LOT 14, MAP OF VERDE MESA, FILED NOVEMBER 17, 1952, MAP BOOK 48, PAGE 44, CONTRA COSTA COUNTY RECORDS,

Including one **NOTE(S) FOR THE ORIGINAL** sum of $688,000.00, that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in,  the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

Installment of Principal and Interest plus impounds and/or advances which became due on 2/1/2012 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

"See Attached Declaration"

The mortgagee, beneficiary, or authorized agent has fulfilled its obligation under California Civil Code Section 2923.5(a) by contacting the borrower either in person or by telephone to assess the borrower's financial situation and explore options to avoid foreclosure prior to 30 days of filing the Notice of Default. The borrower was advised of their right to a subsequent meeting within 14 days of the initial contact. In addition, the borrower was provided with the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency.

Dated: 11/16/2012

Power Default Services, Inc.

BY: _La Tricia Hemphill_

LaTricia Hemphill, Trustee Sales Officer

CALIFORNIA SB 1137 DECLARATION - NOTICE OF DEFAULT - LOAN:    0031588098    CASE:

Property Address:
223 VERDE MESA DR
DANVILLE  California  94528                              WILLIAMS, BILL

                                             BORROWER:

## PLEASE COMPLETE AND EXECUTE ONLY ONE OF THE BELOW DECLARATION

### DECLARATION OF DUE DILIGENCE

DUE DILIGENCE DOCUMENTATION
DUE DILIGENCE COMPLETED
CONTACT MADE WITH BORROWER: 10/31/2012

This statement is to certify that the below signed mortgagee, beneficiary or authorized agent has contacted the borrower, tried with due diligence to contact the borrower as required by CCC Section 2923.5.

Dated:    11 / 6 / 12

By: Brett Bewley Vice President

                *Brett  Bewley*

Signature of Mortgagee, Beneficiary of Authorized Agent

### (ONLY COMPLETE THE BELOW DECLARATION OF IF APPLICABLE).

## Declaration that Compliance with CCC Section 2923.5(b) is Not Required

This statement is to certify that the below signed mortgagee, beneficiary or authorized agent was not required to comply with CCC Section 2923.5(b) because:

☐ Pursuant to California Civil Code § 2923.5(h)(1), the borrower has surrendered the property as evidence by a letter confirming the surrender or by delivering the keys to the property to the mortgagee, trustee, beneficiary, or authorized agent of the mortgagee, trustee, or beneficiary.

☐ Pursuant to Civil Code § 2923.5(b) and (h)(2), the beneficiary or beneficiary's authorized agent has evidence in its file, and reasonably believes, that the borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to beneficiaries.

☐ Pursuant to Civil Code § 2923.5(b) and (h)(3), the beneficiary or, the beneficiary's authorized agent verified information that, on or before the date of this declaration, the borrower(s) has filed for bankruptcy, and the proceedings have not finalized. "Finalized" is not defined by § 2923.5(h)(3). For purposes of this Code section, trustee, foreclosure agent and/or their authorized agent are defining the term as either: (1) an order entered on the court's docket closing the file by the court; or, (2) an order entered on the court's docket missing the bankruptcy case. If the beneficiary believes that the bankruptcy's agent interprets "finalized" in another manner please, state the basis upon which the beneficiary believes that the bankruptcy has not been "finalized":

Dated:

By:

                                     "END OF DOC"

Signature of Mortgagee, Beneficiary of Authorized Agent

I hereby certify that this is a true
And correct copy of the original
On file in this office

ATTEST JUL 06 2015

Joseph E. Canciamilla
County Clerk
County Centre Costa County, California
By. _____ Deputy Clerk